**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

**JAMES M. WESTON, JR.**                                                                                    **PLAINTIFF**

**v.**                                                                       **CIVIL ACTION NO. 3:23-cv-147-BJB**

**LOUISVILLE METROPOLITAN GOVERNMENT et al.**                      **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

Plaintiff James M. Weston, Jr., a pretrial detainee at the Louisville Metro Department of

Corrections (LMDC), initiated this lawsuit by filing a *pro se* Complaint (DN 1). On initial

review of the Complaint and First Amended Complaint (DN 6) under 28 U.S.C. § 1915A, the

Court dismissed Plaintiff's claims but allowed him to file a Second Amended Complaint to name

individual Defendants (DN 9).

Counsel for Plaintiff entered an appearance (DN 12) and filed a Second and a Third

Amended Complaint nearly simultaneously. *See* DNs 13, and 14. The Third appears to be a

duplicate of the Second—though it attaches summonses. So the Court considers the Third

Amended Complaint (DN 14) to be the operative pleading subject to initial review under

§ 1915A. Since its filing, however, counsel withdrew. So Plaintiff is once again proceeding pro

se. *See* DNs 19 & 20. As explained below, some of Plaintiff's claims survive but some must be

dismissed.

**I. STATEMENT OF CLAIMS**

The Third Amended Complaint names as Defendants the Louisville Metro Government

(LMG); the Louisville Metro Department of Corrections; the Jefferson County Sheriff (JCS);

Wellpath, the medical provider at LMDC; LMDC Director Jerry Collins; "John/Jane Doe,"

LMDC Director of Classification; "John/Jane Doe," LMDC Medical Services Director; Nurse

Renesha Stone; JCS employee Chad Murrell; and JCS Colonel John Aubrey.  DN 14, PageID #: 73-74.  As summarized below, its allegations—which the Court accepts as true at this stage—relate to Plaintiff's arrest and detention in LMDC.

On February 20, 2023, Murrell and other JCS employees arrived at his residence and questioned his wife about his location.  *Id*. at PageID #: 75.  She specifically informed them that Plaintiff was not carrying a firearm.  *Id*.

On that same date, Murrell observed Plaintiff walking down the street and "excessively and violently" arrested Plaintiff despite being aware that he did have a serious heart condition and did not have a firearm.  *Id*. at PageID #: 77.  Plaintiff did not resist arrest, but JCS employees including Murrell nonetheless tased Plaintiff repeatedly.  *Id*.  Despite his pleading with Murrell not to tase him because of his heart condition, Murrell maliciously and needlessly tased Plaintiff "anywhere from 4-7 times."  *Id*.  Murrell also put his knee in Plaintiff's back unnecessarily and "hit/kicked" him in the ribs causing Plaintiff's head to hit the ground violently.  *Id*.  At the scene of the arrest, Plaintiff had a "cardiac event" and afterwards was hospitalized for three days.  *Id*.

On February 22, 2023, Plaintiff was transferred to LMDC, where the "Classification Doe" improperly housed him in the "detox dorm" and then the fourth floor—settings Plaintiff believes are dangerous for an inmate just released from the hospital.  *Id*. at PageID #: 78.  Plaintiff was supposed to have an evaluation of his heart done at Jewish Hospital shortly after his arrival at LMDC, but Collins, Medical Director Doe, "and/or" Stone did not permit him to attend a follow-up evaluation.  *Id*.  On March 8, 2023, Plaintiff suffered another cardiac event, which he reported to LMDC and Nurse Stone, who failed to act; in fact, help came only after an officer happened to see Plaintiff "struggling for life on the floor."  *Id*.

2

Plaintiff was taken for an EKG, but the machine did not work. *Id*. at PageID #: 79. Rather than taking reasonable steps, like transferring him to a medical facility, Stone instructed that staff give Plaintiff aspirin and take him back to the dorm—yet he was not given any aspirin. *Id*.

On April 7, 2023, Plaintiff was transferred from LMDC to the University of Louisville Hospital. He learned from the medical professionals there that "[t]he excessive tasing . . . caused damage to [his] heart, including but not limited to release of harmful liquids into [his] blood stream." *Id*. Plaintiff will require ongoing medical attention, which should have been provided when he originally requested it. *Id*.

In addition to the events surrounding Plaintiff's arrest on February 20, 2023, Plaintiff also refers to an earlier incident when he was released from the LMDC in August 2022—apparently without a referral to available medical services. Within weeks he had to have surgery on his heart to correct something "which should have been identified and remedied by Collins, Nurse Stone, Medical Services Doe, LMG and/or Well Path while Plaintiff was in their care, custody and control." *Id*. at PageID #: 76. But instead these Defendants "negligently, recklessly, wantonly, and/or with gross negligence, failed to identify, diagnose, and/or properly treat his heart condition." *Id*.

Plaintiff also asserts constitutional and contractual condition-of-confinement claims: he has never received a pillow; the lights are always on in his dorm; there is no natural light or fresh air; he is not provided anything to drink beside dirty sink water, a small carton of milk, and occasional Kool Aid; LMDC dorms contain dust and mold; he repeatedly finds hair in his food; the dorms are not safe or sanitary; he is not given one hour per day outside; and the food is unwholesome and often cold. *Id*. at PageID #: 85-86.

These allegations in the Third Amended Complaint assert violations of Plaintiff's rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution; several provisions of the Kentucky Constitution; negligence per se based on violations of American Corrections Association (ACA) Standards; breach of contract; implied covenant of good faith and fair dealing; promissory and equitable estoppel; intentional infliction of emotional distress; and state-law assault and battery. The operative complaint further alleges the existence of a Jefferson County policy and/or custom "of excessive force/excessive tasing of suspects," even when the suspect is not a threat; an LMG/LMDC policy or custom of understaffing LMDC and inhumane treatment/housing of inmates; and a Wellpath policy/custom of understaffing, substandard care, broken medical equipment, and neglect of inmates' health. *Id*. at PageID #: 80-82.

Plaintiff seeks compensatory damages, punitive damages, and injunctive relief. *Id*. at PageID #: 87.

## II. STANDARD OF REVIEW

Because Plaintiff is an incarcerated individual suing governmental defendants, the Court must conduct an initial review under 28 U.S.C. § 1915A. § 1915A(a); *McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

On review under § 1915A, the trial court must dismiss the case if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1) and (2). A complaint must include "enough facts to state a claim to relief that is plausible on its face" in order to avoid dismissal. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When screening the

complaint, the Court must construe it in the light most favorable to Plaintiff and accept well-pled

allegations as true. *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010). Because the Third

Amended Complaint was prepared by counsel, it is not entitled to the liberal construction

afforded *pro se* pleadings. *See id.*; *Boag v. MacDougall*, 454 U.S. 364, 365 (1982).

### III. ANALYSIS

### A. Defendants LMDC and JCS

The Court's previous initial review dismissed the Louisville Metro Detention Center and

Jefferson County Sheriff because they are not subject to suit under § 1983. *See* DN 9, PageID

#: 46-47; *Rhodes v. McDannel*, 945 F.2d 117, 120 (6th Cir. 1991) (holding that a police

department may not be sued under § 1983); *Marbry v. Corr. Med. Servs.*, No. 99-6706, 238 F.3d

422, 2000 WL 1720959, at *2 (6th Cir. Nov. 6, 2000) (holding that a jail is not an entity subject

to suit under § 1983). For the same reasons set forth in the previous initial review, the Court

dismisses LMDC and JCS as Defendants and construes the claims brought against LMDC and

JCS as brought against the Louisville Metro Government.

### B. Kentucky Constitution

Plaintiff claims Defendants violated various sections of the Kentucky Constitution. DN

14, PageID #: 82.

Kentucky law is clear that the Commonwealth's Constitution provides no direct private

right of action for damages based on violations of state constitutional law. *See Shepherd v. Univ.*

*of Ky.*, No. 5:16-005-KKC, 2016 WL 4059559, at *3 (E.D. Ky. July 28, 2016) ("Kentucky does

not recognize a private right of action for alleged violations of the state Constitution."); *St. Luke*

*Hosp., Inc. v. Straub*, 354 S.W.3d 529, 537 (Ky. 2011) (declining to recognize a new cause of

action for money damages based on state constitutional violations). Nor may § 1983 be used as a

statutory vehicle to vindicate state constitutional claims. *See Tallman v. Elizabethtown Police Dep't*, 344 F. Supp. 2d 992, 997 (W.D. Ky. 2004).

To the extent state precedent doesn't entirely foreclose a request for injunctive relief, *see, e.g.*, *Chabad of Prospect, Inc. v. Louisville Metro Bd. of Zoning Adjustment*, No. 3:20-CV-737, 2022 WL 3641604, at *10 (W.D. Ky. Aug. 23, 2022), Plaintiff requests no injunctive relief in conjunction with these claims. *See* DN 14, 82. Accordingly, Plaintiff's claims under the Kentucky Constitution fail as a matter of law, and the Court dismisses these claims.

### C. Fifth Amendment

Plaintiff alleges that all Defendants have violated the Fifth Amendment. DN 14, PageID #: 75.

The Fifth Amendment of the United States Constitution provides:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

Plaintiff offers no explanation for his invocation of the Fifth Amendment, which "circumscribes only the actions of the federal government." *Fowler v. Campbell*, No. 3:06-CV-P610, 2007 WL 1035007, at *2 (W.D. Ky. Mar. 30, 2007) (citing *Sturgell v. Creasy*, 640 F.2d 843, 850 (6th Cir. 1981)); *see also Walker v. Hughes*, 558 F.2d 1247, 1257 (6th Cir. 1977). Indeed, Plaintiff says nothing at all about any compelled self-incrimination that might implicate the Fifth Amendment's guarantee that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." *See New York v. Quarles*, 467 U.S. 649, 654 (1984). This would be true regardless of whether Plaintiff complained about federal instead of state and local

officials. *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'"). The Court dismisses Plaintiff's Fifth Amendment claims.

## D. Eighth Amendment

Plaintiff also alleges that his treatment at LMDC violated the Eighth Amendment. DN 14, PageID #: 75. The Eighth Amendment applies to a convicted inmate, not a pretrial detainee like Plaintiff. *See Hale v. Boyle Cnty.,* 18 F.4th 845, 852 (6th Cir. 2021). Instead the Fourteenth Amendment applies to claims brought by pretrial detainees though it "affords pretrial detainees a due process right to adequate medical treatment that is analogous to the Eighth Amendment rights of prisoners." *Graham ex rel. Est. of Graham v. Cnty. of Washtenaw*, 358 F.3d 377, 383 n.3 (6th Cir. 2004) (citing *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)). The application of that constitutional amendment to the alleged conduct is discussed below. Accordingly, the Court dismisses Plaintiff's Eighth Amendment claims and instead evaluates his allegations under the Fourteenth Amendment.

## E. Fourteenth Amendment

Plaintiff brings Fourteenth Amendment claims related to his medical care and the conditions of confinement at LMDC.

*1. Medical care*

Plaintiff alleges that Collins, Nurse Stone, Medical Services Doe, LMG, and Well Path "negligently, recklessly, wantonly, and/or with gross negligence, failed to identify, diagnose, and/or properly treat his heart condition" before he was released from LMDC in August 2022 without a referral to available medical services.  DN 14, PageID #: 76.

Plaintiff further alleges that Collins, Medical Director Doe, and Stone did not permit him to attend a follow-up evaluation when he returned to LMDC after a three-day hospitalization for a heart attack.  And that on March 8, 2023, LMDC and Stone failed to act when he reported chest pain.  *Id*. at PageID #: 78.  When Plaintiff again had these symptoms, moreover, he pressed the dorm's emergency button, but help came only when an officer happened to see Plaintiff "struggling for life on the floor."  *Id*.  Finally, when LMDC's EKG machine did not work, Stone didn't transfer him to a medical facility but instead instructed that he be given aspirin (he wasn't) and taken back to the dorm.  *Id*. at PageID #: 79.  Nor was he taken to the University of Louisville Hospital until a month later.  *Id*.

Pretrial detainees have a right to adequate medical care under the Fourteenth Amendment.  "An officer violates that right if that officer shows deliberate indifference to [a pretrial detainee's] serious medical needs…."  *Hyman v. Lewis*, 27 F.4th 1233, 1237 (6th Cir. 2022) (internal citations and quotation marks omitted).  A pretrial detainee must satisfy two elements for a claim based on deliberate indifference to a medical need under the Fourteenth Amendment: (1) he "had a sufficiently serious medical need and (2) that each defendant acted deliberately (not accidentally), [and] also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known."  *Helphenstine v. Lewis Cnty.,*

*Ky.*, 60 F.4th 305, 317 (6th Cir. 2023) (quoting *Brawner v. Scott Cnty.*, 14 F.4th 585, 596 (6th

Cir. 2021)) (internal quotation marks omitted).

On its initial review, the Court allows Plaintiff's claim of deliberate indifference to his

serious heart condition to continue against Collins, Medical Director Doe, and Stone in their

individual capacities.

As for Plaintiff's claim against LMG, the Supreme Court has recognized that a municipal

government is not automatically liable for "an injury inflicted solely by its employees or agents."

*Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).   "[A] municipality cannot be

held liable solely because it employs a tortfeasor."   *Id*. at 691 (emphasis in original); *see also*

*Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006) (no vicarious liability for

constitutional violations committed by city employees).   Instead, the municipality may be held

liable only if the government itself is to blame for the unconstitutional acts—that is, if it adopted

or ratified a policy or custom that caused the harm inflicted by its officers or employees.   *Monell*,

436 U.S. at 694 (indicating that "the government as an entity is responsible under § 1983" only

"when execution of a government's policy or custom . . . inflicts the injury").   Congress did not

render municipalities liable, in other words, "unless action pursuant to official municipal policy

of some nature caused a constitutional tort."   *Id*. at 691.   Proving this requires a plaintiff to "point

to a municipal 'policy or custom' and show that it was the 'moving force' behind the

constitutional violation."   *Crabbs v. Scott*, 800 F. App'x 332, 336 (6th Cir. 2020) (quoting

*Monell*, 436 U.S. at 694).

Plaintiff does not state a claim against LMG.   Although he alleges that LMG had a policy

or custom of understaffing LMDC and "inhumane treatment/housing of inmates," DN 14,

PageID #: 80, he provides no plausible factual support for that conclusory assertion.   Nor does he

allege that a policy or custom of LMG was responsible for his allegedly inadequate medical treatment.

Plaintiff has, however, alleged that Wellpath maintained a policy or custom of understaffing, substandard care, broken medical equipment, and neglect of inmates' health.  So the Court allows a claim for deliberate indifference to a serious medical need to continue against it.  *Id.* at PageID #: 81; *Johnson v. Wellpath/CSS*, No. 3:21-CV-00484-JHM, 2023 WL 4240756, at *3 (W.D. Ky. June 28, 2023) (" The same analysis that applies to a § 1983 claim against a municipality applies to a § 1983 claim against a private corporation, such as Wellpath.") (citing *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996)).  "[A] private entity which contracts with the state to perform a traditional state function such as providing medical services to prison inmates may be sued under § 1983 as one acting 'under color of state law.'"  *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993).

### *2. Conditions of confinement*

Plaintiff's broad allegations of less specific constitutional violations fail to state a claim on which relief may be granted, however.  These include his allegations (described above) regarding pillows, bright lights, lack of natural light and fresh air, dirty water and inadequate milk and Kool Aid, cold and unhealthy food, dust and mold, hairs in his food, inadequate outdoor time, and generally unsafe and unsanitary dorms.  According to Plaintiff, these conditions "reflect further violations of Constitutional . . . rights by LMG, Collins, Medical Director Doe and/or Classification Doe.".  DN 14, PageID #: 85-86.  But he doesn't explain why they would violate his rights.  Nor does he explain why being housed in the "detox dorm" and on the fourth floor amount to unconstitutionally dangerous settings.  *Id.* at PageID #: 78.

Nothing in Plaintiff's complaint suggests that these alleged conditions create a substantial risk of serious harm to Plaintiff's health. *Assi v. Hanshaw*, 625 F. Supp. 3d 722, 745 (S.D. Ohio 2022). Nor does Plaintiff allege that he has been harmed in a constitutional manner by any of these conditions. Accordingly, no non-speculative allegations state a plausible claim here. *See Twombly*, 550 U.S. at 555, 570 (holding that an allegation that creates the possibility that a plaintiff might later establish undisclosed facts supporting recovery does not state a plausible claim for relief); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.") (cleaned up).

### F. Fourth Amendment and assault and battery

Plaintiff alleges that even though he did not resist arrest and Murrell knew he did not have a firearm, Murrell kicked him and tased him. And Murrell continued to do so even after Plaintiff pleaded with him not to due to his heart condition. Accepting these allegations as true, as the Court must, Plaintiff's state law assault and battery claims and his individual-capacity Fourth Amendment excessive-force claim may continue against Murrell. *See Saalim v. Walmart, Inc.*, 97 F.4th 995, 1009-10 (6th Cir. 2024) ("[T]he police can use a [t]aser . . . to subdue him; but when a suspect does not resist[ ] or has stopped resisting, they cannot.") (citation omitted); *Browning v. Edmonson Cnty., Ky.*, 18 F.4th 516, 525 (6th Cir. 2021) ("[A]n individual has a constitutional right not to be tased when he or she is not actively resisting[.]"); *Cockrell v. City of Cincinnati*, 468 F. App'x 491, 496 (6th Cir. 2012).

Additionally, Plaintiff alleges a policy or custom "of excessive force/excessive tasing of suspects," especially African American suspects, even when the suspect has surrendered and is

not a threat.  According to Plaintiff, the tactics used by the Jefferson County Sheriff's Office

against him "are identical to" those found to be "unlawful" in a recent Department of Justice

report.  DN 14, PageID #: 80.  His complaint alleges that the use of force in his own arrest is part

of the custom of excessive force that he says has been adopted by the Sheriff's Office as

described in the DOJ report regarding the LMPD.  Though the nature of the alleged policy or

custom is not entirely clear, and neither is the relationship between the Sheriff's Office and

LMPD in this context, Plaintiff has alleged enough factual support for his claim to allow it to

continue against LMG as well.

### G. State law claims against LMG

Plaintiff alleges that LMDC's inmate handbook constitutes a contract between Plaintiff

and LMG and that LMG breached that contract.  DN 14, PageID #: 85.  He also claims that LMG

should be estopped from arguing that the handbook does not constitute a contract or other

obligation.  *Id*. at PageID #: 84.  And Plaintiff alleges that LMDC, in violating the ACA's

standards, was negligent per se.  *Id*. at PageID #: 87.

"While the Court evaluates sovereign immunity from federal claims under the Eleventh

Amendment, the Court analyzes Kentucky law to determine sovereign immunity from state law

claims."  *Ruplinger v. Louisville/Jefferson Cnty. Metro Gov't*, No. 3:19-CV-583-DJH-RSE, 2021

WL 682075, at *4 (W.D. Ky. Feb. 22, 2021).  "Under Kentucky law, political subdivisions of the

Commonwealth, including county governments, are entitled to sovereign immunity."  *Daugherty*

*v. Louisville-Jefferson Cnty. Metro Gov't*, 495 F. Supp. 3d 513, 519 (W.D. Ky. 2020) (citing

*Yanero v. Davis*, 65 S.W.3d 510, 525 (Ky. 2001)).  LMG, a consolidated local government, has

"the same sovereign immunity granted counties, their agencies, officers, and employees."  Ky.

Rev. Stat. § 67C.101(2)(e).  Accordingly, the state law claims asserted against LMG are barred

by sovereign immunity. *Jewish Hosp. Healthcare Servs., Inc. v. Louisville/Jefferson Cnty. Metro Gov't*, 270 S.W.3d 904, 907 (Ky. App. 2008) ("Metro Government is entitled to sovereign immunity."); *see also Daugherty*, 495 F. Supp. 3d at 519–20; *Albin v. Louisville Metro Gov't*, No. 3:19-CV-576-DJH, 2020 WL 1310495, at *3 (W.D. Ky. Mar. 19, 2020) (finding LMG entitled to sovereign immunity and dismissing state law claims).  Nor is there any apparent basis to construe Plaintiff's bare factual allegations as indicating the handbook amounts to a legally binding contract.  The Court dismisses Plaintiff's state law claims against LMG.

### H. Intentional infliction of emotional distress

Plaintiff alleges that Defendants' actions were intentionally designed to cause him severe mental/emotional anguish and that he suffered and continues to suffer "severe mental and/or emotional anguish as a result of Defendants' acts and/or omissions."  DN 14, PageID #: 86.

Kentucky generally treats IIED as a "gap-filler" claim, which is not available if "an actor's conduct amounts to the commission of one of the traditional torts such as assault, battery, or negligence for which recovery for emotional distress is allowed." *Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 298–99 (Ky. Ct. App. 1993).  Here, constitutional and traditional state law torts for violations of his Fourth and Fourteenth Amendment rights and assault and battery are available to address Plaintiff's claimed emotional distress, as discussed above.

The Court recognizes that the tort "is still a permissible cause of action, despite the availability of more traditional torts, as long as the defendants solely intended to cause extreme emotional distress." *Green v. Floyd Cnty., Ky.*, 803 F. Supp. 2d 652, 655 (E.D. Ky. 2011).  But Plaintiff does not allege that any Defendant acted solely to cause extreme emotional distress, so the Court dismisses Plaintiff's IIED claim. *Lovins v. Hurt*, No. CIV.A. 11-216-JBC, 2011 WL 5592771, at *3 (E.D. Ky. Nov. 16, 2011) ("When the claim of emotional distress is a supplement

to another tort claim, such as false imprisonment, the burden of showing sole intent cannot be met."); *Abney v. Gulley Remodeling & Maint., Inc.*, No. 2009-CA-001490-MR, 2010 WL 2867933, at *4 (Ky. Ct. App. July 23, 2010).

### I. Colonel Aubrey

Plaintiff doesn't allege personal involvement by Aubrey in any of his claims. Accordingly, he fails to state a claim against this Defendant. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing claims because complaint did not "allege with any degree of specificity which of the named defendants were personally involved in or responsible for each" alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant).

### IV. CONCLUSION AND ORDER

For these reasons, the Court **DISMISSES** Plaintiff's claims against the LMDC, JCS, and Colonel Aubrey; his Fifth Amendment, Eighth Amendment, and Fourteenth Amendment conditions-of-confinement claims; and his claims for state constitutional violations, breach of contract, breach of implied covenant of good faith and fair dealing, promissory estoppel, negligence per se, and intentional infliction of emotional distress. These claims fail to state a claim for which relief may be granted and seek monetary relief shielded under 28 U.S.C. § 1915A(b)(1) and (2).

The Court **DIRECTS** the Clerk to terminate the Louisville Metropolitan Department of Corrections, the Jefferson County Sheriff, John/Jane Doe LMDC Director of Classification, and Colonel Aubrey as Defendants in this lawsuit.

The  Court will enter a separate Service and Scheduling Order to govern the development of the remaining claims, *i.e.*, Plaintiff's Fourth Amendment claims against LMG and Murrell, his assault and battery claim against Murrell, and his Fourteenth Amendment claims related to his medical care against Wellpath and against Collins, Medical Director Doe, and Stone in their individual capacities.

Date:  July 19, 2024

Benjamin Beaton, District Judge
United States District Court

cc:      Plaintiff, *pro se*
         Defendants
B213.009

15