UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**JAMES M. WESTON, JR.**                                                 **PLAINTIFF**

**v.**                                           **CIVIL ACTION NO. 3:23-CV-P147-JHM**

**LOUISVILLE METRO GOVERNMENT, et al.**                   **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

Before the Court is the Second Motion for Summary Judgment filed by Chad Murrell (DN 105). Plaintiff has responded (DN 109), and Defendant Murrell has replied (DN 112). The matter being ripe, the Court will grant Defendant Murrell's motion for the following reasons.

### I. STATEMENT OF THE CASE

After initial review of the Third Amended Complaint[1] (hereinafter "complaint") (DN 14), drafted by Plaintiff's then-counsel,[2] Plaintiff's 42 U.S.C. § 1983 Fourth Amendment excessive force claims against Defendant Murrell and his state-law assault and battery claim against Defendant Murrell remained (DN 23). Plaintiff's allegations were as follows. On February 20, 2023, Plaintiff was "lawfully walking down the street," when deputies, "purportedly" executing a warrant for his arrest, spotted him, and performed "an unlawful and unnecessary 'u-turn' in the midst of traffic[.]" DN 14, para (15). According to Plaintiff, because he is an "African-American male who has been the victim of several abusive and unlawful interactions with local law enforcement," he feared for his safety and ran. *Id*. at para (19). The deputies "soon caught up to Plaintiff." *Id*. at para (20). The complaint further alleged:

---

[1] On initial review of this case under 28 U.S.C. § 1915A, the Court dismissed Plaintiff's claims but allowed him to file a Second Amended Complaint to name individual Defendants (DN 9). Counsel for Plaintiff entered an appearance (DN 12) and filed a Second and a Third Amended Complaint nearly simultaneously. *See* DNs 13 and 14. The Third appeared to be a duplicate of the Second—though it attached summonses. The Court determined, therefore, that the Third Amended Complaint (DN 14) was the operative pleading subject to initial review.

[2] Plaintiff is no longer represented by counsel.

  25. [On] February 20, 2023, JCS[O] ** representatives, including but not necessarily limited to Murrell ** excessively and violently undertook Plaintiff's arrest in a manner consistent with the scathing criticisms of LMG/LMPD in the DOJ Report.  Even though (a) Plaintiff did not have a gun, (b) ** Murrell ** knew or should have known that Plaintiff did not have a gun, (c) Plaintiff yelled that he did not have a gun and (d) Plaintiff did not resist arrest, ** Murrell ** tased Plaintiff repeatedly. As Plaintiff was pleading with ** Murrell ** not to tase him because of his heart condition, and that ** Murrell ** was "going to kill him," ** Murrell ** maliciously ** and needlessly ** tased Plaintiff anywhere from 4-7 times.

  26. ** Murrell's ** search of Plaintiff confirmed that Plaintiff did not have a gun. Plaintiff was going in and out of consciousness during this time and ** Murrell ** got nervous about what he had done (and continued to do). ** Murrell ** also had his knee in Plaintiff's back during the assault, even though it was clearly unnecessary, and even hit/kicked at his ribs and caused Plaintiff's head to violently hit the ground.

  27. Plaintiff had a cardiac event and/or other complications at the scene of the arrest, so ** Murrell ** took Plaintiff to the University of Louisville Hospital[.]

DN 14, paras (25-27).

## II. SUMMARY-JUDGMENT STANDARD

Before the Court may grant a motion for summary judgment, it must find that there is "no genuine dispute as to any material fact" and that the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  Factual differences are not considered material unless the differences are such that a reasonable jury could find for the party contesting the summary judgment motion.  *Id*. at 252.

Assuming the moving party satisfies its burden of production, the nonmovant "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that

reveal a genuine issue for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Celotex*, 477 U.S. at 324). The non-moving party's evidence is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the party opposing summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The fact that a plaintiff is *pro se* does not lessen his obligations under Rule 56. "The liberal treatment of pro se pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010) (citations omitted). Further, the Court notes that Plaintiff's complaint is not entitled to the liberal construction afforded *pro se* litigants because it was drafted by an attorney.

### III. ARGUMENTS

Defendant Murrell argues that since Plaintiff's alleged excessive force claims occurred prior to the time he was handcuffed and subdued his claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), because Plaintiff pleaded guilty to resisting arrest. DN 105-1, PageID #: 981. He points to his response to Plaintiff's interrogatories, in which he provides his description of the incident, in pertinent part:

> As Deputy Murrell gained ground on James, while still running, James began yelling that he was going to f***ing kill Deputy Murrell. At this same time, Deputy Murrell witnessed James reach towards the bottom of his shirt and begin to lift it with his left hand while simultaneously reaching into his waistband with his right hand. This movement, in conjunction with James' continual non-compliance, led Deputy Murrell to believe that James was reaching for a weapon and intended to spin around towards Deputy Murrell and use said weapon against him. Accordingly, from the opposite side of a chain link fence, Deputy Murrell deployed his taser, hitting James in the back and causing James to fall forward. It was at this moment James finally stopped running. Once lying on the ground, face down and with the taser prongs still in his back, Deputy Murrell instructed James to show his hands and put his arms up but instead of complying James continued to reach into

3

>his waistband, where Deputy Murrell believed James may be storing a weapon. Accordingly, Deputy Murrell again deployed his taser, tasing James for a second time. Following the second tasing, Deputy Murrell again ordered James to show his hands and put his arms above his head, which James again refused to do. Due to James continually resisting and remaining unsubdued, Deputy Murrell had no option but to tase James a third time. *Following a third tasing, James showed his hands and put his hands above his head, in compliance with Deputy Murrell's orders. At this time, Deputy Bray placed handcuffs on James.*

DN 105-3, PageID #: 1005 (emphasis added).

Defendant Murrell also points to Plaintiff's deposition testimony that the tasings occurred "back to back," DN 105-4, PageID #: 1021, and that the last thing he remembered was being tased and grabbing his chest. *Id*. at PageID #: 1023. Plaintiff further testified that he believed that Defendant Murrell's foot was on his chin and neck after which he blacked out during the next tasing. *Id*. at PageID #: 1025. Defendant Murrell provides the taser log showing that the taser's trigger was deployed only three times and that those deployments occurred in less than one second. DN 105-5, PageID #: 1027. He also supplies Plaintiff's interrogatory answer, which unequivocally states that Plaintiff blacked out *before he was handcuffed*. DN 105-6, PageID #: 1046 ("[After being tased,] I fell down in shock believing I was going to die as I started having sharp pains in my chest [and] was grabbing at it, the [Defendant] tazed me again from this point I don't remember anything until I woke up in the hospital.").

In response, Plaintiff argues, "Counsel for Defendant Murrell wants this Court to believe that it is impossible for an Officer to use excessive force prior to placing handcuffs on a defendant . . . ." DN 109, PageID #: 1128. He offers his own affidavit in which he avers under penalty of perjury that:

>1). On or about the 20th day of February 2023, Mr. Weston was pursued by Officer Murrell. (Defendant Murrell's Second Motion for Summary Judgment pg. 4)
>
>2). Once Weston realized he was being pursued he stopped running. (Murrell's Second Motion for Summary Judgment pg. 5)

4

    3). Once Weston stopped running and for no reason, Murrell tasered him three times.

    4). Mr. Weston suffered a serious injury which required medical attention because of Officer Murrell's action.

    5). After Weston was on the ground, Murrell stuck his foot on Weston's face.

    6). The only reason Weston was charged with resisting arrest was because he made Officer Murrell run and when he gave up running, officer Murrell tasered him three times, not because Weston was resisting, but because this was Officer Murrell's way of punishing Weston for making him run.

    7). Mr. Weston states Murrell's actions amount to excessive force.

DN 109-1, PageID #: 1132. Plaintiff does not aver that he was tased after he was handcuffed and brought under control.

Defendant Murrell's reply points out that Plaintiff does not argue or aver that Defendant Murrell used excessive force after he was handcuffed. DN 112, PageID #: 1146.

## IV. ANALYSIS

### A. § 1983 Excessive Force Claim

In *Heck*, the Supreme Court held that a state prisoner may not assert a § 1983 claim if success on that claim would render the conviction or sentence invalid, until and unless "the conviction or sentence has been reversed on direct appeal, expunged by Executive Order, declared invalid by a state tribunal, or has been called into question by a federal court's issuance of a writ of habeas corpus under 28 U.S.C. § 2254." 512 U.S. at 486-87. In the excessive force context, *Heck* bars a plaintiff's claim for excessive force when the plaintiff was convicted of resisting arrest and state law makes "excessive force . . . an affirmative defense" to that crime. *Schreiber v. Moe*, 596 F.3d 323, 334 (6th Cir. 2010); *Coble v. City of White House*, 634 F.3d 865, 867 n.2 (6th Cir. 2011).

Kentucky defines the crime of resisting arrest as follows:

A person is guilty of resisting arrest when he intentionally prevents or attempts to prevent a peace officer, recognized to be acting under color of his official authority, from effecting an arrest of the actor or another by:

(a) Using or threatening to use physical force or violence against the peace officer or another; or

(b) Using any other means creating a substantial risk of causing physical injury to the peace officer or another.

Ky. Rev. Stat. § 520.090(1). "[I]n Kentucky, defendants charged with resisting arrest may raise excessive force as an affirmative defense." *Spurlin v. Kromer*, No. 4:21-CV-106-BJB, 2024 WL 4151173, at *2 (W.D. Ky. Sept. 11, 2024) (citing Ky. Rev. Stat. § 520.090 (Commentary)); *see also Burke v. Forbis*, No. 3:18-cv-802, 2021 WL 2418574, at *3 (W.D. Ky. June 14, 2021) (collecting sources); *Hart by & through Dillon v. Lawson*, No. 6:20-CV-147-REW-CJS, 2024 WL 251147, at *10–11 (E.D. Ky. Jan. 23, 2024) ("Because Hart could have raised excessive force as a defense, but did not, his claim . . . is barred by his state guilty plea [to resisting arrest].").

It is undisputed that Plaintiff pleaded guilty to resisting arrest. Defendant Murrell attaches certified documents from Plaintiff's criminal record of his guilty plea which set forth the following facts of the case: "On January 18, 2023, Defendant escaped from the [Louisville Metro Detention Center] Home Incarceration Program. . . . When Defendant was apprehended by police on February 20, 2023, he fled from police and resisted arrest." DN 105-2, PageID #: 995. Plaintiff pleaded guilty to "Resisting Arrest – 12 Months." *Id*. at PageID #: 992, 996. Thus, any excessive force claim occurring before the arrest could have been brought as an affirmative defense to the charge of resisting arrest and is *Heck*-barred because success on the claim would "necessarily imply the invalidity" of his underlying state criminal conviction. *See, e.g.*, *Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 608 (6th Cir. 2014).

6

Plaintiff's focus in his response and affidavit that it is not "impossible for an Officer to use excessive force prior to placing handcuffs on a defendant" is misguided. The question here is whether Defendant Murrell *applied excessive force after* Plaintiff was "handcuffed and brought under control." *Matheney v. City of Cookeville, Tenn.*, 461 F. App'x 427, 431 (6th Cir. 2012). For if the alleged excessive force occurred after it would not be barred by *Heck*. "[A]n excessive force claim is not barred [by *Heck*] when the alleged use of force occurred after the suspect was handcuffed and brought under control." *Id.* at 431; *see also Swiecicki v. Delgado*, 463 F.3d 489, 494 (6th Cir. 2006), *abrogated on other grounds by Wallace v. Kato*, 549 U.S. 384 (2007).

Defendant Murrell has provided evidence sufficient to find that *no excess force occurred after* Plaintiff was "handcuffed and brought under control." *Matheney*, 461 F. App'x at 431. Plaintiff does not argue or aver that he was tased after he was handcuffed and brought under control. DN 109-1, PageID #: 1132. Thus, the Court holds that no reasonable juror could find for Plaintiff, and Defendant Murrell is entitled to summary judgment on this claim. *Anderson*, 477 U.S. at 252.

**B. State-Law Claim**

Defendant Murrell argues that Plaintiff's state-law excessive force claim is barred by issue preclusion based on his guilty plea and that he is qualifiedly immune under Kentucky law on Plaintiff's state-law claim. DN 105-2, PageID #: 981-83, 986-87. Plaintiff's complaint claimed that he was a victim of "assault" when he was hit and kicked during the arrest, and the Court allowed a state-law claim of assault and battery to go forward. DN 23, PageID #: 123. Plaintiff's complaint, prepared by counsel, did not allege a state-law excessive force claim. Defendant Murrell's summary-judgment motion does not address state-law assault and battery, mistakenly addressing state-law excessive force instead. Plaintiff's response (DN 109) and affidavit (DN 109-

1) neither refer to state-law assault and battery nor address Defendant Murrell's argument that he is qualifiedly immune from a state-law excessive force claim.

In Plaintiff's deposition testimony, when asked about being hit and kicked, Plaintiff clarified that his allegation referred to Defendant Murrell placing his foot on his chin which occurred before Plaintiff lost consciousness. DN 105-4, PageID #: 1025-26 ("[Defendant] had a foot on my . . . like the bottom of my chin . . . . His whole reason is he kept saying I was resisting . . . ."). It therefore now appears that Plaintiff did not intend to raise a separate state-law claim for assault and battery.

Regardless, the Sixth Circuit's "jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment." *Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) (citing *Hicks v. Concorde Career Coll.*, 449 F. App'x 484, 487 (6th Cir. 2011) (holding that a district court properly declines to consider the merits of a claim when a plaintiff fails to address it in a response to a motion for summary judgment); *see also Clark v. City of Dublin*, 178 F. App'x 522, 524-25 (6th Cir. 2006) (recognizing that the failure to respond properly to motion for summary judgment arguments constitutes abandonment of a claim); *Conner v. Hardee's Food Sys.*, 65 F. App'x 19, 24–25 (6th Cir. 2003) (finding, when the plaintiffs "failed to brief the issue before the district court," that the plaintiffs abandoned their claim); *Colston v. Cleveland Pub. Libr.*, No. 1:12–CV–204, 2012 WL 3309663, at *2 n.2 (N.D. Ohio Aug. 13, 2012) (deeming a claim abandoned and granting summary judgment when a plaintiff "did not respond *or even mention [the] claim* in her opposition to [the d]efendants' motions for summary judgment") (emphasis added). Therefore, the Court considers any state-law claim against Defendant Murrell waived.

## V. CONCLUSION AND ORDER

Based on the foregoing,

**IT IS ORDERED** that motion for summary judgment filed by Defendant Chad Murrell (DN 105) is **GRANTED**.

The Court **DIRECTS the Clerk of Court to terminate Chad Murrell** as a party to this action.

*[Signature]*

Joseph H. McKinley Jr., Senior Judge
United States District Court

Date: March 12, 2026

cc:   Plaintiff, *pro se*
      Counsel of record
4414.009