UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**JAMES M. WESTON, JR.**                                                                          **PLAINTIFF**

**v.**                                                            **CIVIL ACTION NO. 3:23-CV-P147-JHM**

**LOUISVILLE METRO GOVERNMENT, et al.**                                              **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

Before the Court are the motions for summary judgment filed by Defendant Jerry Collins (DN 106) and Defendant Renesha Stone (DN 99). Plaintiff has not responded to Defendant Collins's motion despite the Court's Order for him to do so by March 3, 2026 (DN 107). That Order warned Plaintiff that his failure to do so would result in dismissal of the action. Because Plaintiff did not file his response as ordered by the Court his claims against Defendant Collins are subject to immediate dismissal. However, before doing so, the Court will address Defendant Collins's argument that Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA) thus barring his claims. This argument was also adopted by Defendant Stone in her supplemental memorandum (DN 108) in support of her summary-judgment motion (DN 99).

The Court issued a prior Memorandum and Order (DN 111) that, among other things, determined that on the evidence presented with Defendant Collins's summary-judgment motion and adopted by Defendant Stone, it appeared that Defendants Collins and Stone have carried their burden to show that Plaintiff did not exhaust Louisville Metro Detention Center's (LMDC) generally available administrative remedies. Consequently, the Court explained, it was clear that exhaustion is a threshold issue which must be resolved in Plaintiff's favor before the Court considers any other argument, but that Plaintiff was entitled to respond to the argument that he

failed to exhaust before filing suit and to the evidence submitted before the Court considered the issue. Plaintiff failed to file a response; nonetheless, the Court now considers the exhaustion issue.

## I. COMPLAINT

Plaintiff's Third Amended Complaint, the relevant complaint here, alleged that Defendants Collins, the LMDC Director, and Stone, a nurse at LMDC, "negligently, recklessly, wantonly, and/or with gross negligence, failed to identify, diagnose, and/or properly treat his heart condition" before he was released from LMDC in August 2022 without a referral to available medical services. DN 14, PageID #: 76. He also alleged that Defendants Collins and Stone did not permit him to attend a follow-up evaluation when he returned to LMDC after his arrest and a subsequent three-day hospitalization for a heart attack, and that on March 8, 2023, Defendant Stone failed to act when he reported chest pain. *Id*. at PageID #: 78. According to Plaintiff, on that date, he pressed the dorm's emergency button, but help came only when an officer happened to see Plaintiff "struggling for life on the floor." *Id*. He further alleged that, when LMDC's EKG machine did not work, Defendant Stone did not transfer him to a medical facility but instead instructed that he be given aspirin and taken back to the dorm; he was not taken to the University of Louisville Hospital until a month later. *Id*. at PageID #: 79. On its initial review, the Court allowed Plaintiff's 42 U.S.C. § 1983 claim of deliberate indifference to his heart condition to continue against Defendants Collins and Stone in their individual capacities.

As the Court laid out in its prior Memorandum and Order Defendant Collins argues in his summary-judgment motion, adopted by Defendant Stone, that, by not appealing the resolution of the grievance related to the care he received for his heart condition, Plaintiff has not exhausted his available remedies as required by the PLRA. In support, Defendant Collins attaches the LMDC

Inmate Grievance Procedures, Plaintiff's Grievance #9113 concerning his heart condition, and the affidavit of Stephanie Brown, LMDC's custodian of grievance records. DN 106-2–106-4.

## II. STANDARD

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court, interpreting § 1997e, has expressly stated: "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). Failure to exhaust administrative remedies under the PLRA is an affirmative defense for which defendants bear the burden of proof. *Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012). Accordingly, summary judgment may be granted "'only if defendants establish the absence of a "genuine dispute as to any material fact" regarding non-exhaustion.'" *Id.* at 456 (quoting *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011)). Because defendants also bear the burden of persuasion for this issue at trial, their "initial summary judgment burden is 'higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Id.* at 455–56 (quoting *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)). The burden of defendants asserting the affirmative defense of exhaustion is satisfied where the defendants produce an administrative policy that governs the filing of grievances and show that the plaintiff failed to fully exhaust his administrative remedies pursuant to the policy. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006).

### III. ANALYSIS

In order "to properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,'—rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (citation omitted) (quoting *Woodford v. Ngo*, 548 U.S. at 88). To exhaust a claim, a prisoner must proceed through all of the steps of a prison's administrative process, *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999), and failure to "properly" exhaust bars suit in federal court. *Woodford v. Ngo*, 548 U.S. at 93. "Proper exhaustion" means that the plaintiff complied with the administrative "agency's deadlines and other critical procedural rules." *Id.* at 90-91. But an inmate need only exhaust those remedies that are actually "available"; if an administrative remedy "is not capable of use to obtain relief," then the PLRA will not act as a barrier to suit. *Ross v. Blake*, 578 U.S. 632, 642 (2016).

According to Brown's affidavit, Plaintiff filed only one grievance, #9113, "concerning the issue of his medical care." DN 106-4, PageID #: 1117. That grievance, filed on March 10, 2023, stated that during Plaintiff's arrest he was tased 5-8 times causing a heart episode requiring a trip to the hospital. DN 106-3, PageID #: 1114. Then, on March 8, 2023, he had a heart episode in LMDC which left him struggling on the ground despite having pressed the emergency button several times without response. *Id*. He only received assistance after an officer walked by. *Id*. He further stated that he was then taken for an EKG in LMDC, but the machine did not work and the Wellpath nurse "said to simply give him aspirin and send him back to his dorm." *Id*. He also asserted that LMDC "failed to him keep an appointment for his heart at Jewish Hospital 3/2/23." *Id*. The response to the grievance from Defendant Stone was that "medical staff is notified of emergencies in dorms from custody staff. You have an upcoming appointment with the chronic

4

care provider to discuss your cardiac history. When off-site appointments are scheduled, you will not know when the appointment date/time is due to safety and security reasons." *Id*. (cleaned up). The grievance was marked "Resolved." *Id*.

LMDC Inmate Grievance Procedure 03-5.02 VI. G.2.i provides, "The inmate shall have five (5) working days after receipt of the resolution response to decide whether to appeal to the next level." DN 106-2, PageID #: 1110. The grievance, which was returned to and signed for by Plaintiff on April 25, 2023, also indicated that he had five working days from the denial of the grievance to file an appeal to the LMDC Director or his Designee. DN 106-3. And Brown's affidavit explains "[p]er LMDC policy, an inmate has five [] working days from the denial of a grievance to file an appeal to the LMDC Director or his Designee" and avers that Plaintiff did not appeal the resolution of his grievance. DN 106-4, PageID #: 1116-17.

Here, Defendants have carried their "burden of showing that there was a generally available administrative remedy, and that the prisoner did not exhaust that remedy[.]" *Morgan v. Kentucky*, No. 3:17-CV-00474-JHM, 2018 WL 715468, at *3 (W.D. Ky. Feb. 5, 2018) (quotation marks and citation omitted). A prisoner, like Plaintiff, does not exhaust available administrative remedies when he files a grievance but "d[oes] not appeal the denial of that complaint to the highest possible administrative level." *Wright v. Morris*, 111 F.3d 414, 417 n.3 (6th Cir. 1997). The record demonstrates that Plaintiff did not exhaust LMDC's generally available administrative remedies. Consequently, Defendants Collins and Stone are entitled to summary judgment.

## IV. CONCLUSION AND ORDER

For the foregoing reasons,

**IT IS ORDERED** that Defendants' motions for summary judgment (DNs 99 and 106) are **GRANTED**.

The Court will enter a separate Judgment.

Date: March 13, 2026

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc:	Plaintiff, *pro se*
	Counsel of record
4414.009